IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| TODD LOPEZ, As Personal Representative | § | |
| of the Wrongful Death ESTATE OF | § | |
| CLARA MAE COOK | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 6:23-cv-769 |
| | § | |
| CANTEX HEALTH CARE CENTERS II, | § | |
| LLC, FARMINGTON HEALTH CARE | § | |
| CENTER, LTD. CO. d/b/a Cedar Ridge Inn | § | |
| CANTEX CONTINUING CARE | § | |
| NETWORK, LLC, CANTEX HEALTH | § | |
| CARE CENTERS, LLC, CANTEX | § | |
| HEALTH CARE CENTERS III, LLC, | § | |
| MEDCARE MGMT. HOLDINGS, INC., | § | |
| BRATEX, INC., GOTEX INVESTMENTS, | § | |
| INC., GRANT KOCH ROBB | § | |
| INVESTMENTS, LTD., CONCORD | § | |
| WOOD INVESTMENTS, LTD., LB | § | |
| BELON, LLC, SANDRA PENA, in her | § | |
| Individual  and Official Capacities, AND | § | |
| DAVID HICKS,  in his Individual and | § | |
| Official Capacities, | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS CANTEX CONTINUING CARE NETWORK LLC, CANTEX HEALTH
CARE CENTERS III LLC, MEDCARE MGMT. HOLDINGS, INC., BRATEX, INC.,
GOTEX INVESTMENTS, INC., GRANT KOCH ROBB INVESTMENTS, LTD.,
CONCORD WOOD INVESTMENTS, LTD., LB BELON, LLC'S
NOTICE OF REMOVAL**

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

PLEASE TAKE NOTICE that Defendants CANTEX CONTINUING CARE NETWORK

LLC, CANTEX HEALTH CARE CENTERS III LLC, MEDCARE MGMT. HOLDINGS, INC.,

BRATEX, INC., GOTEX INVESTMENTS, INC., GRANT KOCH ROBB INVESTMENTS,

LTD., CONCORD  WOOD  INVESTMENTS,  LTD.,  LB    BELON,  LLC,  (collectively

1

"Defendants") hereby remove this action to this Court from the First Judicial District Court of Santa Fe County, New Mexico by filing this Notice and by filing a copy of this Notice in the First Judicial District Court of Santa Fe County, New Mexico, pursuant to 28 U.S.C. §§ 1441 and 1446, reserving all defenses and objections to venue. The grounds for removal are based on 28 U.S.C. § 1331, 42 U.S.C. § 247d-6d(e)(1), 28 U.S.C. § 1442(a)(1), and 28 U.S.C. § 1367. In support hereof, Defendants state as follows:

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

1.      This is a proceeding in which Plaintiff alleges medical negligence, negligent hiring, training, retention, and supervision, respondeat superior, unfair practices, civil conspiracy, joint venture, and punitive damages against Defendants arising from and concerning an alleged failure to adequately implement COVID-19 countermeasures and properly develop and follow COVID-19 precautions and protocols, resulting in Clara Mae Cook allegedly contracting COVID-19 and suffering injuries and death. *See generally* Pl. Am. Compl., attached hereto.

2.      This case is removable under 28 U.S.C. § 1441(a) on the basis of "original jurisdiction" because Plaintiff's Complaint for Wrongful Death asserts claims "arising under" and governed by federal law within the meaning of 28 U.S.C. § 1331. In addition, this case is removable pursuant to 28 U.S.C. § 1442(a)(1) because Defendants are being sued in connection with acts undertaken at the direction of a federal officer.

3.      On September 16, 2022, Plaintiff Todd Lopez, as Personal Representative of the Wrongful Death Estate of Clara Mae Cook, filed a Complaint for Wrongful Death in the First Judicial District Court of Santa Fe County, New Mexico, Case Number D-101-CV-2022-01676 ("State Court Action").  A true and correct copy of Plaintiff's Complaint for Wrongful Death is attached hereto.  The State Court Action is one of eight cases that were originally filed against

defendants Cantex Health Care Centers II, LLC and Farmington Health Care Center, Ltd. Co. d/b/a

Cedar Ridge Inn on or about September 16, 2022. All such cases were removed to federal court

on the same bases. The prior removal of this matter was assigned case number 1:22-CV-00825-

KWR-JMR.

4.      After Plaintiff sought to remand the removed case to the state court, this Court

issued a Consolidated Order Remanding Cases on February 24, 2023 (the "Consolidated Order").

This Court's Consolidated Order is currently on appeal to the Tenth Circuit Court of Appeals in

Case Nos. 23-2038, 23-2039, 23-2040, 23-2041, 23-2042, 23-2043, 23-2044, and 23-2045.

5.      Plaintiff sought leave to amend his Complaint on March 29, 2023 in the State Court

Action. The First Judicial District Court of Santa Fe County granted Plaintiff's Motion for Leave

on April 12, 2023, and Plaintiff filed his First Amended Complaint for Wrongful Death on April

18, 2023. Defendants were all served on August 10, 2023, by certified mail. Thus, Defendants'

removal is timely under 28 U.S.C. § 1446(b) as it is being filed within 30 days of service of the

First Amended Complaint upon Defendants, which all received service of this suit for the first time

on August 10, 2023.

6.      In accordance with 28 U.S.C. §1446(a) and Local Rule 81, a true and correct copy

of all of the process and pleadings filed in the State Court Action to date, along with a copy of the

Civil Docket Sheet, are collectively attached to this notice.

7.      This Notice of Removal is being filed in the United States District Court for the

District of New Mexico, the District Court of the United States within which the State Court Action

is pending, as required by 28 U.S.C. §§1441(a) and 1446(a).

8.      This case is being removed from the First Judicial District Court of Santa Fe

County, New Mexico. Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly serve a copy of

this Notice of Removal upon counsel for the Plaintiff and will promptly file a copy of the same with the District Clerk of the First Judicial District Court of Santa Fe County, New Mexico.

9.      In accordance with Local Rule 81.1, Defendants are filing with the Clerk (as attachments hereto) legible copies of records and proceedings from the State Court Action

10.      In accordance with Local Rule 3.1 of this Court, Defendants attach with this Notice of Removal a completed civil cover sheet.

11.      Accordingly, Defendants have satisfied all procedural requirements governing removal pursuant to 28 U.S.C. §§ 1441 and 1446, the Federal Rules of Civil Procedure, and the Local Rules of this Court.

12.      By filing this Notice of Removal, Defendants do not waive any rights or defenses which may be available to Defendants.

13.      All fees required by law in connection with this notice have been filed by Defendants.

14.      All defendants having been properly joined and served with process consent to this removal.

## PLAINTIFF'S ALLEGATIONS AND CLAIMS IN THE COMPLAINT

15.      Plaintiff's First Amended Complaint alleges Defendants failed to adequately implement COVID-19 countermeasures and properly develop and follow COVID-19 plans, precautions and protocols, resulting in Clara Mae Cook allegedly contracting COVID-19 and suffering injuries and death.  *See* Pl. Am. Compl., ¶¶ 27-31.

16.      Plaintiff frames her claims against Defendants as medical negligence, negligent hiring, training, retention, and supervision, respondeat superior, unfair practices, civil conspiracy, joint venture, and punitive damages.  *See* Pl. Am. Compl., ¶¶ 46-110.

4

17.    Plaintiffs' claims arise out of, relate to, or result from Defendants' response to the COVID-19 pandemic and their use, administration and allocation of personal protective equipment ("PPE"), testing equipment, safety equipment, infection control measures, and other countermeasures, as well as their related decision-making, in an attempt to prevent or mitigate the spread of COVID-19.

## GROUNDS FOR REMOVAL

18.    This case is removable under 28 U.S.C. § 1441(a) on the basis of "original jurisdiction" because Plaintiff's Complaint assert claims "arising under" federal law within the meaning of § 1331, as Plaintiff's allegations invoke the exclusive federal jurisdiction of the Court and the immunities from suit and liability promised in the PREP Act. *See* 42 U.S.C. § 247d-6d(e) (exclusive federal cause of action and exclusive federal jurisdiction for claims arising from the alleged administration and use of a COVID-19 countermeasure), (a)(1) and (b)(8) (immunity from suit and liability under state and federal law, and preemption of state law)).

19.    This case is further removable under 28 U.S.C. § 1442(a)(1) on the basis of Federal Officer Jurisdiction as Defendants have been sued for acts undertaken at the direction of a federal officer.

20.    Finally, removal is further afforded under federal question jurisdiction pursuant to the *Grable* doctrine and 28 U.S.C. § 1441(a) as the claims presented pose a substantial federal issue. *See Grable & Sons Metal Prods. V. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).

### I.    The PREP Act Provides for Complete Preemption

21.    "When [a] federal statute completely preempts [a] state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003).

*Beneficial* provides that state claims may be removed to federal court in two circumstances: (1) when Congress expressly provides; or (2) when a federal statute wholly displaces the state-law cause of action. *Id*. The PREP Act wholly displaces state-law causes of action for claims related to a covered person's use, misuse, nonuse or allocation of countermeasures to combat a pandemic by creating an exclusive federal remedy for those claims involving both an administrative and judicial component. 42 U.S.C. §247d-6e; §247d-6d(d)(e). This remedial structure was purposefully established by Congress and is explicitly "exclusive of any other civil action or proceeding for any claim or suit [the PREP Act] encompasses ...." 42 U.S.C. §247d-6e(d). Accordingly, Plaintiffs' allegations of state law causes of action clearly bring their claims within the purview of the PREP Act and mandate complete preemption. *See* Memorandum Ruling in *Rachal v. Natchitoches Nursing & Rehab Center LLC*, Civil Docket No. 1:21-CV-00334, 2021 U.S. Dist. LEXIS 105847, 2021 WL 5449053 (W.D. La. April 30, 2021), at fn. 3, discussed *infra*; *see also* Order Regarding Plaintiffs' Motion to Remand and Defendant's Motion to Dismiss the Complaint in *Garcia v. Welltower OpCo Group, LLC*, No. 8:20-cv-02250-JVS-KESx (C.D. Cal. Feb. 10, 2021), at p. 10, discussed *infra*.

### A.    PREP Act Application to the COVID-19 Pandemic

22.    The PREP Act, which is a component of the Public Health Services Act ("PHSA"), 42 U.S.C. § 201, *et seq*., grants healthcare providers and other covered persons immunity from claims for injuries related to the use of approved countermeasures to combat a national public health emergency, such as the COVID-19 pandemic. Congress' goal was to enable healthcare providers, including nursing facilities like the one sued herein, to focus on using every available means to combat a pandemic and save lives without being chilled in their efforts by the threat of lawsuits. *See* 42 U.S.C. § 247d-6d.

23.     The PREP Act is triggered when the Department of Health and Human Services ("HHS") Secretary issues a declaration defining the scope and breadth of PREP Act protections relevant to a particular public health emergency. *See* 42 U.S.C. § 247d. The PREP Act provides that when a "disease or other health condition or other threat to health constitutes a public health emergency," the Secretary of Health and Human Services (HHS) may issue a declaration "recommending[]…the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures" against the disease. *Id.* When such a declaration issues, "covered persons" who administer or use "covered countermeasures" become "immune from suit and liability under Federal and State law with respect to *all claims for loss caused by, arising out of, relating to, or resulting from* the administration to or the use by an individual of a covered countermeasure" as defined by the Secretary of HHS. 42 U.S.C. § 247d-6d(a)(1) (emphasis added).

24.     A "covered person" includes a person or entity that "is a qualified person" or a "program planner". 42 U.S.C. § 247d–6d(i)(2)(B). A "qualified person" is defined as a "licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeasures under the law of the State in which the countermeasure was prescribed, administered, or dispensed." 42 U.S.C. § 247d–6d(i)(2)(B)(iv). A "program planner" is defined as "a State or local government, including…a person employed by the State or local government, or other person who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with a declaration under subsection (b)." 42 U.S.C. § 247d–6d(i)(6).  Further, the PREP Act defines a "person" as "an individual, partnership, corporation,

association, entity, or public or private corporation, including a federal, state or local government agency or department." 42 U.S.C. § 247d–6d(i)(5).

25.    Congress also explicitly wrote preemption into the PREP Act, stating that "no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that is different from, or is in conflict with, any requirement applicable under this section" and relates to, among other things, use or administration of the covered countermeasure. 42 U.S.C. § 247d-6d(b)(8)(A)-(B).

26.    In addition, Congress provides two exclusive federal remedies in the PREP Act for individuals with claims for loss arising out of the use of covered countermeasures. First, the Act creates a "Covered Countermeasure Process Fund" for purposes of "providing timely, uniform, and adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure." 42 U.S.C. § 247d-6e(a). Claimants can receive compensation from this Fund by applying for benefits through the Countermeasures Injury Compensation Program. *See* 42 C.F.R. §§ 110.1-110.100. Second, an injured person may bring "an exclusive Federal cause of action" under the PREP Act "against a covered person for death or serious physical injury proximately caused by willful misconduct." 42 U.S.C. § 247d-6d(d)(1). The PREP Act sets forth specific procedures that govern lawsuits asserting this cause of action. *Id*. at § 247d-6d(e).

27.    The PREP Act was triggered for COVID-19 when the HHS Secretary issued a declaration on March 17, 2020, announcing that, as of February 4, 2020, "[l]iability immunity as prescribed in the PREP Act…is in effect" for any "[a]ctivities authorized in accordance with the public health and medical response of the Authority Having Jurisdiction to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures following a Declaration of an

emergency" related to COVID-19. Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,201-02 (Mar. 17, 2020), amended by 85 Fed. Reg. 21,012 (Apr. 15, 2020) (the "Declaration").

28.    In that Declaration, the term "administration" is defined, extending beyond the physical distribution of COVID-19 countermeasures to the "management and operation of countermeasure programs as well as the management and operation of locations for [the] purpose of distributing and dispensing countermeasures." *See* 85 Fed. Reg. 15202.

29.    The Declaration also broadly defines "covered countermeasure" as:

> Covered Countermeasures are any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, or any device used in the administration of any such product, and all components and constituent materials of any such product. Covered Countermeasures must be "qualified pandemic or epidemic products," or "security countermeasures," or drugs, biological products, or devices authorized for investigational or emergency use, as those terms are defined in the PREP Act, the FD&C Act, and the Public Health Service Act.

85 Fed. Reg. 15198.

30.    The Declaration was subsequently amended to add respiratory protective devices to the list of covered countermeasures. *See* 85 Fed. Reg. 21012, 21013.[1] On June 8, 2020, the Declaration was amended again to reflect HHS's initial intent to "identify the full range of qualified countermeasures" as permitted under the PREP Act. 85 Fed. Reg. 35100, 35101.

---

[1] The Secretary issued an Amended Declaration under the PREP Act, which was effective as of March 27, 2020. The Amendment added respiratory protective devices approved by NIOSH (National Institute for Occupational Safety and Health) as a covered countermeasure under the PREP Act. On June 4, 2020, the Secretary further amended the March 10, 2020 Declaration to clarify that covered countermeasures under the Declaration include qualified products that limit the harm COVID-19 might otherwise cause. This Amendment was effective as of February 4, 2020. *See* 85 FR 21012.

31.    HHS also issued Advisory Opinions regarding the Declaration. On April 17, 2020, HHS issued an Opinion recognizing the broad, preemptive nature of the Declaration.[2]  The Opinion states that "immunity covers claims for loss sounding in tort or contract" and "PREP Act immunity must be read in light of the PREP Act's broad, express-preemption provision." *Id.* at p. 2.

32.    Additionally, on October 23, 2020, HHS issued "Advisory Opinion 20-04 on the Public Readiness and Emergency Preparedness Act and Secretary's Declaration Under the Act, confirming that "administration" under the PREP Act is much broader than the mere physical provision of a countermeasure to a recipient and encompasses activities related to the "management and operation" of COVID-19 countermeasure programs and those facilities that provide countermeasures to recipients.[3] This Advisory Opinion flatly rejects as "wrong" a pre-pandemic New York trial court ruling in *Casabianca v. Mt. Sinai Medical Center*, 2014 WL 10413521 (New York Co. December 12, 2014), that the PREP Act requires the "direct physical" administration of a COVID-19 countermeasure and that the Act is not applicable to claims involving an omission or failure to act.

33.    On December 3, 2020, the HHS Secretary issued the Fourth Amendment to the Declaration ("Amendment Four") (published at 85 Fed. Reg. 79190 (Dec. 9, 2020)), which, *inter alia*:

      a. Expressly adopts all COVID-19 Advisory Opinions into its initiating Declaration, giving those directives controlling authority over interpretations of the PREP Act; *Id.* at 79191, 79192, 79194-95;

---

[2] *See Advisory Opinion on the Public Readiness and Emergency Preparedness Act and the March 10, 2020 Declaration under the Act*, https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/prep-act-advisory-opinion-hhs-ogc_0.pdf (last visited Sept. 8, 2023).
[3] *See Advisory Opinion 20-04 on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration under the Act*, https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/AO4.2_Updated_FINAL_SIGNED_10.23.20-2.pdf (last visited Sept. 8, 2023).

b.  Declares that an omission to administer a covered countermeasure can fall within the PREP Act's protections; *Id.* at 79191, 79194, 79197; and

c.  Makes explicit that cases involving COVID-19 covered countermeasures are to be in the federal system provided by Congress and that this "federal jurisdiction" is essential to the uniform provision of a national response to the COVID-19 pandemic; *Id.* at 79194, 79196, 79197-98.

*See* 85 Fed. Reg. 79190.

34.  Amendment Four also addresses HHS's authority as explicitly directed by Congress, to define the application of the PREP Act by stating: "42 U.S.C. 247d-6d(b)(7) provides that '[n]o court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this subsection.'" *See* Amendment Four, at 26 n. 25. Therefore, the Secretary's Declaration – including all its amendments and the Advisory Opinions incorporated therein – are controlling as directed by Congress in section (b)(7).  Also, where Congress has expressly delegated interpretative authority to an agency, that agency's interpretative proclamations are controlling on the federal courts. *Chevron, Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984).

35.  On January 8, 2021, HHS published another Advisory Opinion of the Office of General Counsel addressing questions raised by the Fourth Amendment.[4] AO 21-01 confirms that the PREP Act is indeed invoked by allegations that include not only "use" or administration of countermeasures, but alleged failure to act or inaction, where the non-use was the result of conscious decision-making.  *See Rachal,* 2021 U.S. Dist. LEXIS 105847, *12 (concluding that "HHS's interpretation of the PREP Act and its scope [as set forth in AO 21-01] is reasonable" and, moreover, warrants deference given: "(i) the PREP Act's broad grant of authority to the HHS

---

[4] *See Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision Jan. 8, 2021* ("AO 21-01), https://www.hhs.gov/guidance/sites/ default/files/hhs-guidance-documents/2101081078-jo-advisory-opinion-prep-act-complete-preemption-01-08-2021-final-hhs-web.pdf (last visited Sept. 8, 2023).

Secretary; (ii) the Secretary's express incorporation of the OGC's Advisory Opinions into the Declarations for purposes of construing the PREP Act; (iii) the complexity of the relevant statutory provisions; (iv) the technical nature of the subject matter; and (v) the need for uniformity in the judiciary's interpretation of the PREP Act across the United States.").

36.    AO 21-01 also states that "[t]he PREP Act is a 'Complete Preemption' Statute," because it establishes both a federal and administrative cause of action as the only viable claim and vests exclusive jurisdiction in federal court. *Id.* at 2.

**B.    Congress Provides for Complete Preemption in the PREP Act Under *Beneficial***

37.    Congress intended to regulate national responses to pandemics. The PREP Act expressly satisfies the *Beneficial* test of preemption in stating that "a covered person shall be ***immune from suit and liability*** under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure." §247d-6d(a)(1) (emphasis added); *see also* (b)(8) ("during the effective period of a declaration...no State...may establish, enforce, or continue in effect any provision of law or legal requirement that—is different from...any requirement applicable under this section"). The PREP Act further provides that this immunity "applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure...or use of such countermeasure." § 247d-6d(a)(2)(B). HHS has instructed time and again that this preemption is to be given the broadest possible application.[5]

---

[5] HHS refers ***eight times*** to the broad applicability of preemption of state law claims. *See* Advisory Opinion 21-01 (Jan. 8, 2021), at p. 1, Advisory Opinion 20-04 (Oct. 23, 2020), Advisory Opinion 20-02 (May 19, 2020), at p. 4–5, Advisory Opinion 20-01 (Jan. 8, 2020), at p. 2.  HHS

38.     Significantly, the PREP Act also provides an extensive claims and litigation process for COVID-19 claimants in accordance the directives of *Beneficial* by providing for federal redress and displacing state-law liability. Specifically, the PREP Act establishes a pre-litigation no-fault monetary fund for those injured by the use or administration of covered countermeasures that must be exhausted prior to relief under the federal civil claims process (§247d-6e(a), (d)(1)), requiring an exclusive federal remedy for all claims related to countermeasures (§247d-6e(d)(5)), and providing a Federal cause of action as the single exception to immunity (§247d-6d(d)(1)).

## C.    The New Administration Reaffirms PREP Act Provides Complete Preemption

39.     Consistent with its predecessor, the new Administration in 2021 reaffirmed that the PREP Act provides for complete preemption of COVID-19 state law claims. On January 28, 2021, HHS amended the Declaration for the fifth time again asserting that HHS Advisory Opinions are incorporated into the original Declaration. *See* Fifth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, (Jan. 28, 2021), 86 Fed. Reg. 7872, 7874 (stating "[t]he plain language of the PREP Act makes clear that there is complete preemption of state law.").

40.     There have also been three additional amendments further confirming the preemptive effect of the PREP Act, with the sixth on February 16, 2021, the seventh on March 16, 2021, and the eighth on August 4, 2021.  *See* 86 Fed. Reg. 9516 (Feb. 16, 2021), 86 Fed. Reg.

---

refers *six times* to the broad applicability of immunity from state law claims. *See* Advisory Opinion 20-04 (Oct. 23, 2020), at p. 1–2, and Advisory Opinion 20-01 (Jan. 8, 2020), at p. 2, 4, 7.

14462 (Mar. 16, 2021), and 86 Fed. Reg. 41977 (Aug. 4, 2021) (dated July 30, 2021 and retroactive to Mar. 11, 2021).

41.     In addition to these HHS authorities, the U.S. Department of Justice ("DOJ") filed a Statement of Interest ("SOI") of the United States in *Bolton v. Gallatin Center for Rehabilitation & Healing, LLC*, No. 3:30-cv-00683 (M.D. Tenn. Jan. 19, 2021) at Docket No. 35, which constitutes the official position of the United States' interest in the enforcement of the PREP Act, stating, *inter alia,* that the PREP Act "completely preempts claims relating to the administration or use of covered countermeasures with respect to a public health emergency." Further, it states that the two key provisions of the PREP Act – the immunity provision for all Federal and state law claims, and the exclusive alternative remedy provision, established as the sole exception to immunity – operate together to demonstrate the PREP Act's completely preemptive nature. *Id.* The DOJ also noted that the PREP Act is crucial to the "whole-of- nation response" to public health emergencies (which depends on cooperation among private- sector partners and state and local officials across the nation) and "sweeping" immunity was granted to encourage such cooperation. *Id.*

42.     On February 10, 2021, the U.S. District Court for the Central District of California specifically invoked AO 21-01 to deny a motion for remand in an action against a nursing home which alleged failure to adequately use PPE and COVID countermeasures, holding that "the PREP Act is a complete preemption statute ... [and] an adequate basis for federal question jurisdiction exists." *See Garcia v. Welltower OpCo Group LLC*, No 8:20-cv-02250-JVS-KESx, 2021 U.S.Dist. LEXIS 25738, at *24 (C.D. Cal. Feb. 10, 2021). The Court further found that the allegations of the complaint fell squarely within the scope of the PREP Act:

> Plaintiffs' injuries "aris[e] out of, relat[e] to, or result[] from the administration to or the use by an individual of a covered countermeasure." *See* 42 U.S.C. § 247d-6d(a)(1). For

example, the FAC details infection control measures and procedures including symptom checking, staff monitoring and screening, and limiting visitation ....In other places, the FAC directly draws upon the use (and in some case, misuse) of PPE .... The FAC also details screening measures employed by [Defendants] related to certain professional services provided within the facility. These allegations of use and misuse of PPE and the infection control measures directly relate to covered countermeasures within the meaning of the PREP Act.

*Id*., at \*21.

43.     Subsequently, the District Court for the Western District of Louisiana also agreed that the PREP Act is a complete preemption statute, finding that the PREP Act confers federal jurisdiction and completely preempts claims falling within its scope because it includes: 1) a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; 2) a specific jurisdictional grant to the federal courts for enforcement of the right; and 3) a clear Congressional intent that claims brought under the federal law be exclusive.  *See Rachal,* 2021 U.S. Dist. LEXIS 105847, at fn. 3.  *See also Reilly v. Delta Healthcare II*, *LLC*, et. al, No: 8:21-cv-1013-JSM-JSS (M.D. Fla. June 7, 2021), and *Branch v. Lilac Holdings, LLC*, No. 21-cv-00605-BAS-MDD (S.D. Cal. June 16, 2021) (both courts conceding applicability of PREP Act where senior living facilities have moved to dismiss claims based on the immunity and other protections provided therein).

**D.     Plaintiff's Claims Fall Within the Purview of the PREP Act**

44.     Here, based on the face of the Complaint, the totality of the allegations made therein and the logical impact of its most central allegations -- a failure to properly use countermeasures to care for Ms. Cook which led to her contraction of COVID-19 and death -- the PREP Act is implicated by Plaintiff's claims against Defendants as a "covered person" engaged in "recommended activities" under the Act. 42 U.S.C.A. §247d–6d(a)(1).

45.     Defendant Cedar Ridge Inn is a "covered   persons" as contemplated by 42 U.S.C. § 247d–6d and as confirmed by the August 14, 2020 HHS Advisory Opinion in that is a "qualified person" and "program planner" under 42 U.S.C.A. § 247d-6d(i)(2)(B). Defendant Cedar Ridge Inn was acting as a "qualified person" because it is a healthcare provider authorized to administer and/or use FDA approved medical devices, such as face masks, to prevent or mitigate the spread of COVID-19. 42 U.S.C. § 247d-6d(i)(8). Defendant Cedar Ridge Inn was also acting as a "program planner" that managed, supervised and administered the infection control and COVID-19 specific programs in the treatment of COVID-19 patients, under which covered countermeasures, including, but not limited to, the use of face masks and other personal protective equipment, visitation restrictions, infection control procedures, and screening requirements, at its facility in an effort to prevent and mitigate the spread of COVID-19 to its residents during the pandemic. *See Rachal,* 2021 U.S. Dist. LEXIS 105847, at *9-10 (finding nursing homes are "covered persons" under the PREP Act).

46.     Plaintiff has alleged claims involving a "covered activity" relative to a "covered countermeasure." Specifically, Plaintiff alleges Defendants failed to properly care for Ms. Cook, leading to her contraction of COVID-19 at the defendant facility and subsequent death as a result of complications with COVID-19.   *See* Pl. Am. Compl., generally, and ¶¶ 23-45.   More specifically, Plaintiff's claims arise out of, relate to, and result from Defendant's administration use, misuse, and allocation a of countermeasures – and its decisions relating thereto – in treating, diagnosing, curing, preventing, or mitigating COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, including but not limited to PPE, sanitation measures, and quarantining.  42 U.S.C. § 247d-6d(a)(1).  *See Garcia*, at 13-14 ("Plaintiffs' [allegations] disclose possible unsuccessful attempts at compliance with federal or state guidelines – something which

16

the PREP Act, the Declaration, and the January 8, 2021 advisory opinion cover."). These allegations thus cause this action to fall squarely under the definition of use and "administration" thereby invoking the PREP Act.  Thus, Plaintiffs' claims in the Complaint are within the scope of the PREP Act and completely preempted.

> **E.    The District Court has Federal Question Jurisdiction Based on the Willful Misconduct Application of the PREP Act.**

47.    The PREP Act also provides that "the sole exception to the immunity from suit and liability of covered persons [] shall be for an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct," as defined in the Act. § 247d-6d(d)(1). Specifically, the Act defines "willful misconduct" as "an act or omission that is taken--(i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." § 247d-6d(c)(1)(A).

48.    The Second, Third, Fifth, and Seventh Circuits appear to agree that state-law claims for "willful misconduct" are preempted under the Act, but nevertheless held the Act did not apply because the claims at issue before each court did not present "willful misconduct" claims as defined in the Act and the non-willful claims were not preempted. *Leroy v. Hume*, 2023 WL 2928353, at *3 (2d Cir. Apr. 13, 2023); *Maglioli*, 16 F.4th at 409-10 (holding "[t]he PREP Act's language easily satisfies the standard for complete preemption of particular causes of action" which as expressly stated by Congress is an "exclusive cause of action" for "willful misconduct"); *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 586-87 (5th Cir. 2022) ("The United States District Court for the District of Columbia has exclusive jurisdiction to adjudicate these willful-misconduct claims."); *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213-14 (7th Cir. 2022).

49.     Thus, Defendants contend the language of the PREP Act establishes Congress' intent to completely preempt state law causes of action by providing an exclusive federal cause of action for willful misconduct claims and an exclusive remedy for non-willful misconduct claims under the Act (thus leaving no room for any independent state court claims). However, because the District Court has exclusive federal jurisdiction over Plaintiff's willful misconduct claims, it can exercise its supplemental jurisdiction over Plaintiff's state-law claims as well.

50.     Here, Plaintiff has alleged much more than a simple negligence claim and punitive damages request. Instead, Plaintiff has pled causes of action and allegations of willful misconduct that track the elements of a willful misconduct claim under the PREP Act, which is defined as: (1) "an act or omission that is taken"; (2) "intentionally to achieve a wrongful purpose;" (3) "knowingly without legal or factual justification; and" (4) "in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." § 247d-6d(c)(1)(A).

51.     Specifically, Plaintiff alleges Defendants (indisputably "covered persons") knowingly made fraudulent and misleading statements to the residents and their families as to the services the facility would provide residents with the intent to deceive and mislead the Ms. Cook and her family in order to increase profits by not supplying those services, all while having knowledge of ongoing deficiencies at the facility. *See* Pl. Am. Compl., ¶¶ 80-81.  Plaintiff also alleges Defendants combined to accomplish a wrongful purpose of committing fraud by promising to ensure the residents' safety, but intentionally failed to provide adequate care to the residents based on each resident's specific acuity level given "the unique and potentially deadly threat posed by COVID-19."  *See* Pl. Am. Compl., ¶¶ 94-95.  Plaintiff further contends that Defendants knowingly "prioritized profits over resident safety" and "fraudulently misused state, federal, and

private funds" by accepting such funds and then failing to provide adequate care to the residents by failing to, amongst other things, follow and enforce policies and procedures designed to mitigate the spread of COVID-19. *See* Pl. Am. Compl., ¶¶ 96-97.

52.      According to Plaintiff, these policies and procedures designed to mitigate the spread of COVID-19 required Defendants to development and implement a facility-specific infection control plan; clean and sterilize medical equipment and other high-contact surfaces; to conduct COVID-19 symptom screening on all residents, staff, vendors, and visitors; and to consistently follow federal and state guidelines requiring the use of personal protective equipment to prevent the spread of COVID-19. *See* Pl. Am. Compl., ¶¶ 27-30.  Plaintiff further alleges that Defendants' acts and omissions resulted in the residents contracting COVID-19 and ultimately passing away due to COVID-19 complications; and that Plaintiff is entitled to punitive damages because Defendants' acts and omissions "were malicious, willful, reckless, wanton, fraudulent, and/or undertaken in bad faith," and that the "totality of the circumstances demonstrates Defendants' wanton and/or reckless disregard for the lives, safety, and/or property of other persons, including the life, safety, health, and well-being of" the residents.  *See* Pl. Am. Compl., ¶¶ 74, 102.  Therefore, Plaintiff alleges a claim for willful misconduct that is preempted under the PREP Act.

## II.      Federal Question Jurisdiction Exists Under *Grable* Doctrine

53.      Federal jurisdiction also exists where an action "arises under" federal law and raises a substantial federal issue, actually disputed and substantial. *See Grable*, 545 U.S. at 312.

54.      HHS, by and through its Fourth Amended Declaration and Advisory Opinion 21-01, confirms that the PREP Act confers separate, independent grounds for federal question jurisdiction under the *Grable* doctrine. *See* AO 21-01 at pp. 4–5, discussing *Grable*, 545 U.S. at

312. Advisory Opinion 21-01 states that "ordaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that the case belongs in federal court." *Id*. at p. 5. HHS provides that "there are substantial federal legal and policy…interests within the meaning of [the *Grable* doctrine] in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities." *Id.* (quoting 85 Fed. Reg. at 79, 197).

55.     HHS further states that: "Congress delegated to [the Secretary] the authority to strike the appropriate Federal-state balance with respect to particular covered countermeasures through PREP Act declarations." HHS's interpretation of *Grable* is consistent with the Supreme Court's long-standing rule "that in certain cases federal question jurisdiction will lie over state law claims that implicate federal issues." *Grable*, 545 U.S. at 312. "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.*

56.     The *Grable* court determined that there is no single test for determining whether an embedded federal issue exists, but that, in general, a two-step process determines whether a state law claim "arises under" federal law: (1) the state law claim must necessarily raise a stated federal issue that is actually disputed and substantial; and (2) federal courts must be able to entertain the state law claims "without disturbing a congressionally approved balance of state and federal judicial responsibilities." 545 U.S. at 314; *see also Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 US 804, 808 (1986).

57.     Here, both prongs are satisfied. As detailed above, the PREP Act establishes a willful misconduct cause of action and a remedy for non-willful claims for loss caused by the

administration of a countermeasure to mitigate the spread of COVID-19. The Act also sets forth specific federal procedures that govern these claims. Thus, Plaintiffs' complaints, which allege claims within the scope of the PREP Act as detailed herein, necessarily raise the application of federal law, but not just as a potential immunity defense under the Act. Indeed, Plaintiffs' claims also raise federal questions, such as whether Plaintiffs' claims satisfy the federal willful misconduct standard in the Act, whether the claims assert non-willful misconduct claims subject to the federal victim compensation fund, and whether Defendants failed to follow federal guidelines pertaining to COVID-19. The Secretary's Declaration recognized these "substantial" federal issues (that are disputed by the Parties) provide the basis of federal question jurisdiction under the *Grable* doctrine and warrant a "uniform interpretation of the PREP Act." 85 Fed. Reg. 79190-01 at 79194. Indeed, removal pursuant to the *Grable* doctrine would not disrupt the federal-state balance as it would ensure technical federal laws and procedures are uniformly applied throughout the nation as envisioned by Congress.

58.    Further, Plaintiff brings claims relating to Defendants' alleged failures in the use and administration of covered countermeasures in connection with the care and treatment of Ms. Cook, which failures they specifically alleges resulted in her COVID-19 infection and which therefore necessarily implicate disputed and substantial federal issues. *See* § 247d-6d. Also, as confirmed by Advisory Opinion 21-01 and the HHS Declaration (and its amendments), the PREP Act expresses a clear intention to supersede and preempt state control of the very issues raised by Plaintiff, i.e., issues concerning Defendants' conscious decisions when and how to use or administer (or not) covered countermeasures, including COVID-19 testing and monitoring equipment, drugs, PPE and diagnostic testing. Indeed, both the *Rachal* and the *Garcia* courts have

found HHS's interpretation of the PREP Act to be reasonable and warrant deference. *Garcia*, p. 5 No. 8:20-cv-02250; *Rachal*, 2021 U.S. Dist. LEXIS 105847, *11.

59.    A substantial and disputed federal issue regarding the application of the PREP Act to Plaintiff's claims therefore necessarily exists and must be resolved by this Court to ensure the uniform and appropriate application of the PREP Act. The federal legal and policy issues described in the Fourth Amended Declaration and the HHS Advisory Opinions control and authorize this Court to retain this action under *Grable*.

### III.    Federal Question Jurisdiction Exists Because Defendants Acted Pursuant to a Federal Officer

60.    Removal is also proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer. "Unlike the general removal statute, the federal officer removal statute [Section 1442(a)] is to be 'broadly construed' in favor of a federal forum." *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 466 (3d Cir. 2015). The Tenth Circuit Court of Appeals recently explained that "private defendants may remove under [the federal officer removal statute] § 1442(a)(1) if they can show (1) they acted under the direction of a federal officer, (2) the claim has a connection or association with government-directed conduct, and (3) they have a colorable federal defense to the claim or claims." *Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1251 (10th Cir. 2022). The Tenth Circuit also held that § 1442(a)(1) should be liberally construed. *Id.*

#### A.    Defendants Acted Under the Direction of a Federal Officer

61.    Certainly, a special relationship exists between skilled nursing facilities and the federal government. Specifically, in the U.S., nursing facilities that participate in Medicare and Medicaid are acting under federal officers—namely, HHS, its Secretary, and CMS.  Indeed, the

Supreme Court recently addressed this special relationship in *Biden v. Missouri*, when explaining that the Medicare and Medicaid programs "are administered by the Secretary of Health and Human Services, who has general statutory authority to promulgate regulations 'as may be necessary to the efficient administration of the functions with which [he] is charged.'" *Biden v. Missouri*, 142 S.Ct. 647, 650 (2022)(quotation omitted)(bracket in original). "One such function—perhaps the most basic, given the Department's core mission—is to ensure that the healthcare providers who care for Medicare and Medicaid patients protect their patients' health and safety." *Id*.

62.     "To that end, Congress authorized the Secretary to promulgate, as a condition of a facility's participation in the programs, such 'requirements as [he] finds necessary in the interest of the health and safety of individuals who are furnished services in the institution.'" *Id*. at 650 (quotation omitted)(bracket in original). "Relying on these authorities, the Secretary has established long lists of detailed conditions with which facilities must comply to be eligible to receive Medicare and Medicaid funds." *Id*.

63.     In fact, "healthcare facilities that wish to participate in Medicare and Medicaid have always been obligated to satisfy a host of conditions that address the safe and effective provision of healthcare, not simply sound accounting." *Id*. at 652. "Such conditions have long included a requirement that certain providers maintain and enforce an 'infection prevention and control program designed ... to help prevent the development and transmission of communicable diseases and infections.'" *Id*. at 650-51 (quoting 42 C.F.R. § 483.80 for long-term care facilities). And "the Secretary routinely imposes conditions of participation that relate to the qualifications and duties of healthcare workers themselves." *Id*. at 653. Indeed, "the Secretary's role in administering Medicare and Medicaid goes far beyond that of a mere bookkeeper." *Id*.

64.     This pre-existing special relationship between facilities likes Defendants and HHS only intensified during the COVID-19 pandemic when, after the outbreak of COVID-19 in the United States, the federal government declared that healthcare providers such as Defendants were "critical infrastructure" businesses that were obligated to aid the federal government in preventing the spread of the virus during this unprecedented national emergency by following the federal government's direction under its close supervision.[6]

65.     Designating these businesses' activities as "critical infrastructure" enabled the federal government to enlist the aid of these private parties to ensure the continued operation of the healthcare infrastructure that is "so vital to the United States that [its] incapacity or destruction . . . would have a debilitating impact on security, national economic security, national public health or safety, or any combination of those matters." 42 U.S.C. § 5195c(e). And when the federal government instructed these private parties on how to carry on their "critical" business during this national emergency, it enlisted them to carry out the duty of the government itself to ensure the continued provision of "services critical to maintaining the national defense, continuity of government, economic prosperity, and quality of life in the United States." *Id.*; 42 U.S.C. § 5195c(b)(3).

66.     Indeed, the federal government enlisted nursing facilities, including senior living communities, in its efforts to fulfill the government's task of ensuring that facilities such as Defendant Cedar Ridge Inn could assist in the safe transfer and admission of patients between healthcare facilities during an unprecedented national crisis. Thus, Defendants acted "to assist, or

---

[6] *See* Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response, CISA.gov, *available at* https://www.cisa.gov/sites/default/files/publications/CISA-Guidance-on-Essential-Critical-Infrastructure-Workers-1-20-508c.pdf (last visited Sept. 6, 202).

to help carry out, the duties or tasks of the federal superior," by helping the federal government "fulfill [these and] other basic governmental tasks" that otherwise "the Government itself would have had to perform." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007).

67.    Also, during the COVID-19 crisis, there has been a nationwide PPE shortage. FEMA worked closely with businesses designated as "healthcare/public health" critical infrastructure to address the need for PPE and other critical supplies to continue operations in accordance with CDC guidance. Congress also expressly approved and supported the pervasive new role of the federal government in overseeing the operation of "critical infrastructure" skilled nursing homes and assisted living communities by allocating additional funding to such healthcare providers under the CARES Act to accommodate critical ongoing operations in view of the pandemic.

68.    Since the pandemic began, through the federal directives issued by the CDC, CMS and others, federal authorities have been explicitly guiding operational decisions related to clinical pandemic response in skilled nursing facilities. As just a few examples, facilities were ordered to restrict visitation, cancel communal dining, and implement active screening and staff for fever and respiratory symptoms.[7]

69.    Facilities were also instructed on, among other things, which patients and staff to test for COVID-19, under what circumstances to use and how to conserve PPE, when to permit staff who had COVID-19 to return to work, how to mitigate staff shortages including when to

---

[7] *E.g.,* Ctrs. For Medicare & Medicaid  Servs., *COVID-19 Long-Term Care Facility Guidance* (Apr. 2, 2020); Ctrs. For Disease Control & Prevention, *Strategies for Optimizing the Supply of Facemasks* (updated Mar. 17, 2020); CDC, *Using Personal Protective Equipment* (updated Aug 19, 2020); Exec. Order No. 20-009, *In Re: Suspension of Statutes, Rules, and Orders Pursuant to Executive Order Number 20-52, Made Necessary by the COVID-19 Public Health Emergency*; Exec. Order No, 20-52, *Emergency Management-COVID-19 Public Health Emergency*.

permit COVID-19 positive but asymptomatic staff to return to work, and how to handle the isolation of residents infected with COVID-19 and those under investigation for COVID-19.

70.     The United States Supreme Court has held that the phrase "acting under" involves "an effort to assist, or help carry out, the duties or tasks of the federal superior." *Watson* 551 U.S. at 152; *see In re Commonwealth's, supra*, at 457. The "acting under" requirement is broad and is also to be liberally construed. *Watson* at 147. Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 813 (3rd Cir. 2016). Detailed regulation to compel specific conduct satisfies the "acting under" requirement. *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d. 387 (5th Cir. 1998).

71.     Here, as conceded to by Plaintiffs—HHS required facilities such as Defendants "to take immediate and significant precautions to protect their residents – some of the most vulnerable members of society – from the potentially deadly consequences of contracting COVID-19." *See* Pl. Am. Compl., ¶¶ 26.  There is no dispute that a special relationship exists between HHS and Defendants that requires Defendants to assist or help carry out HHS' core mission to ensure residents' health and safety are protected, which was only magnified during the pandemic, this Court should find the removal under the federal officer statute is appropriate. *See Watson v. Philip Morris Companies, Inc*., 551 U.S. 142, 143 (2007) ("private person's 'acting under' must involve an effort to assist, or to help carry out, the federal superior's duties or tasks.").

**B.      Plaintiff's Claims have a Connection or Association with Government-Directed Conduct**

72.     Since Plaintiffs' claims are premised on Defendants' alleged deficiencies in consistently adhering to federal directives in working to mitigate the spread of COVID-19, Plaintiffs' claims have a connection with government-directed conduct and the second requirement

for federal officer jurisdiction has been satisfied. *See Latiolais v. Huntington Ingalls*, Inc., 951 F.3d 286, 296 (5th Cir. 2020)(explaining that under § 1442(a), "any civil action that is connected or associated with an act under color of federal office may be removed.").

73.    Defendants also satisfy the "nexus" or "causation" requirement for federal officer jurisdiction, which requires that the alleged conduct have been undertaken "for or relating to" a federal office. To meet this requirement, "it is sufficient for there to be a connection or association between the act in question and the federal office." *In re Commonwealth's, 790 F.3d at 471. Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (Congress "broadened federal officer removal to actions, not just causally connected, but alternatively connected or associated, with acts under color of federal office."

74.    Here, Plaintiff's claims easily satisfy the "minimal 'causal connection'" requirement. *Latiolais*, 951 F.3d at 295 (*quoting Willingham v. Morgan*, 395 U.S. 402, 409 (1969), and *Jefferson Cty. v. Acker,* 527 U.S. 423, 432-33 (1999)). Plaintiff's Complaint alleges a deficiency in Defendants' actions taken in response to federal directives in working to combat and mitigate the spread of the virus and in caring for Ms. Cook during pandemic. Thus, there is a clear causal nexus between Plaintiff's claims and the actions taken by Defendants pursuant to federal direction during this global health crisis.

### C.    Defendants Have a Colorable Federal Defense to Plaintiff's Claims

75.    For purposes of removal, Defendants must present a colorable defense based on federal law:  the defense must only be "colorable," and need not be "clearly sustainable," as the purpose for the removal statute is to assure that the validity of the defense is tried in federal court. *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). A defendant need only show it has a plausible federal defense. *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1182 (7th Cir. 2012). because Plaintiffs'

claims fall within the scope of the PREP Act, the third requirement for federal officer jurisdiction has been satisfied as Defendants have a colorable defense to Plaintiffs' claims that is specifically enumerated in the PREP Act legislation.

76.    Further, Defendants assert a federal defense in this case—namely, immunity and preemption under the PREP Act for claims of willful misconduct and the claims related to its administration and use of "covered countermeasures" in caring for decedent during the pandemic. In doing so, Defendants satisfy the "colorable federal defense" element of the federal officer removal statute.

## CONCLUSION

This case is removable to the U.S. District Court for the District of New Mexico.  By enacting the PREP Act and applying it to the COVID-19 pandemic, Congress manifested its intent to completely preempt state law with respect to claims that invoke or involve PREP Act immunity and to create an exclusive federal remedy for such preempted claims. Plaintiff's claims against Defendants clearly fall within that category and are, thus, completely preempted for purposes of federal question jurisdiction and are removable under 28 U.S.C. § 1441(a). Separately, removal is appropriate under federal question jurisdiction pursuant to the *Grable* doctrine as the claims presented pose a substantial federal issue. Finally, Plaintiff's claims are removable under 28 U.S.C. § 1442(a)(1) because they arise out of the actions Defendants undertook at the direction of the federal government, and this Court therefore maintains jurisdiction over this case.

Respectfully submitted,

By: */s/ Frank Alvarez*
     **FRANK ALVAREZ**
     NM Bar No. 27610
     frank.alvarez@qpwblaw.com

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**

1700 Pacific Avenue, Suite 4545
Dallas, Texas  75201
(214) 754-8755  (Telephone)
(214) 754-8744  (Telecopier)

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 8th day of September, 2023, a true and correct copy of the foregoing document was served in compliance with the Federal Rules of Civil Procedure upon all counsel of record, as indicated below:

Joshua K. Conaway
Aaron K. Thompson
Noe Astorga-Corral
Fadduol, Cluff, Hardy & Conaway, P.C.
3301 San Mateo Boulevard NE
Albuquerque, NM  87110
Telephone:  (505) 243-6045
jconaway@fchclaw.com
athompson@fchclaw.com
nastorga-corral@fchclaw.com

-and-

Nichole Henry
Whitener Law Firm PA
4110 Cutler Avenue NE
Albuquerque, New Mexico 87110-3896
Telephone:  (505) 242-333.
Facsimile:  (505) 242-3322
nichole@whitenerlaw.com
*Counsel for Plaintiffs*

/s/ Frank Alvarez
**FRANK ALVAREZ**