# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

TODD LOPEZ, as Personal Representative
Of the wrongful death estate of Raymond Gabehart,

      Plaintiff,

      v.                          Case No. 1:23-cv-765 KWR/KK

CANTEX HEALTH CARE CENTERS II, LLC,
*et al.*

      Defendants.

_____

TODD LOPEZ, as Personal Representative
Of the wrongful death estate of Clara Mae Cook,

      Plaintiff,

      v.                          Case No. 1:23-cv-769 KWR/KK

CANTEX HEALTH CARE CENTERS II, LLC,
*et al.*

      Defendants.

_____

TODD LOPEZ, as Personal Representative
Of the wrongful death estate of Nellie Harwood,

      Plaintiff,

      v.                          Case No. 1:23-cv-770 KWR/KK

CANTEX HEALTH CARE CENTERS II, LLC,
*et al.*

      Defendants.

_____

TODD LOPEZ, as Personal Representative
Of the wrongful death estate of Don Begay,

       Plaintiff,

      v.                                Case No. 1:23-cv-915 KWR/KK

CANTEX HEALTH CARE CENTERS II, LLC,
*et al.*

       Defendants.

_____

TODD LOPEZ, as Personal Representative
Of the wrongful death estate of Gladys Pioche,

       Plaintiff,

      v.                                Case No. 1:23-cv-920 KWR/KK

CANTEX HEALTH CARE CENTERS II, LLC,
*et al.*

       Defendants.

_____

TODD LOPEZ, as Personal Representative
Of the wrongful death estate of Eva Hunt,

       Plaintiff,

      v.                                Case No. 1:23-cv-961 KWR/KK

CANTEX HEALTH CARE CENTERS II, LLC,
*et al.*

       Defendants.

_____

TODD LOPEZ, as Personal Representative
Of the wrongful death estate of Robert Lewis,

       Plaintiff,

      v.                                Case No. 1:23-cv-1003 KWR/KK

CANTEX HEALTH CARE CENTERS II, LLC,
*et al.*

      Defendants.

_____

DENNIS MURPHY, as Personal Representative
Of the wrongful death estate of Joe A. James,

      Plaintiff,

      v.                                  Case No. 1:23-cv-1005 KWR/KK

CANTEX HEALTH CARE CENTERS II, LLC,
*et al.*

      Defendants.

## <u>CONSOLIDATED ORDER REMANDING CASES</u>

THIS MATTER comes before the Court on motions to remand filed in the following eight wrongful death cases: (1) *Lopez (Gabehart) v. Cantex Health Care Centers II, LLC, et al.*, 23-cv-00765 KWR/KK; (2) *Lopez (Cook) v. Cantex Health Care Centers II, LLC, et al.*, 23-cv-00769 KWR/KK; (3) *Lopez (Harwood) v. Cantex Health Care Centers II, LLC, et al.*, 23-cv-770 KWR/KK; (4) *Lopez (Begay) v. Cantex Health Care Centers II, LLC, et al.*, 23-cv-915 KWR/KK; (5) *Lopez (Pioche) v. Cantex Health Care Centers II, LLC, et al.*, 23-cv-920 KWR/KK; and (6) *Lopez (Hunt) v. Cantex Health Care Centers II, LLC, et al.*, 23-cv-961 KWR/KK; and (7) *Lopez (Lewis) v. Cantex Health Care Centers II, LLC, et al.,* 23-cv-1003 KWR/KK; and (8) *Murphy (James) v. Cantex Health Care Centers II, LLC, et al.*, 23-cv-1005 KWR/KK.[1]

Plaintiffs serve as the personal representatives for eight separate wrongful death estates. Plaintiffs only asserted state law claims, and no party asserts that this Court has diversity

---

[1] The Court enters a consolidated order as the notices of removal, motions to remand, and accompanying briefing in each case appear to be substantially similar.

jurisdiction over this case.  Nevertheless, Defendants removed these cases from state court on the basis of (1) federal question jurisdiction as a result of complete preemption; (2) federal officer jurisdiction, and (3) federal question jurisdiction pursuant to the *Grable* doctrine.

For the reasons stated below, the Court will grant Plaintiffs' motions to remand, as the Court lacks subject matter jurisdiction over this case.  Therefore, in **each** case the Court **GRANTS** the motion to remand.  Each case shall be remanded to the First Judicial District Court, County of Santa Fe, New Mexico.  This order will be entered in all eight cases.

## BACKGROUND

Plaintiffs represent the wrongful death estates of several individuals who died in nursing or long-term care facilities owned by some of the Defendants.  On behalf of the wrongful death estates, Plaintiffs filed Complaints for Wrongful Death in the First Judicial District Court, County of Santa Fe, New Mexico.  The complaints asserted the following four state law causes of action against Defendants:

> Count I: Negligence resulting in wrongful death, including ordinary negligence,
>
> > negligent hiring, training, retention, and/or supervision, negligence per se, and
> >
> > respondeat superior;
>
> Count II: Violations of the Unfair Practices Act;
>
> Count III: Civil Conspiracy; and
>
> Count IV: Joint Venture.

Plaintiffs alleged that Defendants failed to implement measures to prevent or mitigate the spread of COVID-19.  They alleged that Defendants failed to implement or enforce an appropriate facility control plan, failed to routinely and systematically clean and sterilize common medical equipment and other high-contact surfaces within Defendants' facility, failed to use personal

protective equipment, permitted or required staff members to continue working at the facility despite exhibiting COVID-19 symptoms, and operated the facilities with an insufficient number of staff.

On November 2, 2022, Defendants Cantex Health Care Centers II, LLC and Farmington Health Care Centers, Ltd., initially removed these cases to this Court.  The cases were numbered as follows:

(1) *Lopez (Begay) v. Cantex Health Care Centers II, LLC, et al*., 22-cv-00822 KWR/JMR;

(2) *Lopez (Pioche) v. Cantex Health Care Centers II, LLC, et al*., 22-cv-00824 KWR/JMR;

(3) *Lopez (Cook) v. Cantex Health Care Centers II, LLC, et al*., 22-cv-00825 KWR/JMR;

(4) *Lopez (Gabehart) v. Cantex Health Care Centers II, LLC, et al*., 22-cv-00826 KWR/JMR;

(5) *Lopez (Harwood) v. Cantex Health Care Centers II, LLC, et al*., 22-cv-00827 KWR/JMR;

(6) *Lopez (Hunt) v. Cantex Health Care Centers II, LLC, et al*., 22-cv-00831 KWR/JMR;

(7) *Murphy (James) v. Cantex Health Care Centers II, LLC, et al*., 22-cv-00832 KWR/JMR; and

(8) *Lopez (Lewis) v. Cantex Health Care Centers II, LLC, et al*., 22-cv-00834 KWR/JMR.

On February 24, 2023, the Court remanded those cases to state court for lack of jurisdiction. Defendants appealed, and the remand decision was affirmed.

After Plaintiffs filed an amended complaint in state court naming additional defendants, the new defendants removed these cases a second time to this court, and the cases were assigned new case numbers. Defendants removed on similar grounds as before, but no longer asserted that the Court has diversity jurisdiction over this case. Therefore, because no party asserts in the notice

of removal or briefing that diversity jurisdiction exists, the Court assumes that diversity jurisdiction does not exist. Defendants now assert (1) federal question jurisdiction; (2) federal officer jurisdiction; and (3) federal question jurisdiction pursuant to the *Grable* doctrine. *See, e.g., Lopez (Hunt) v. Cantex Health Care Centers II*, LLC, Doc. 1, 23-cv-961 KWR/KK (D.N.M.).

## DISCUSSION

I. <u>**The Court issues a consolidated order addressing remand motions in all eight cases.**</u>

The Court issues a consolidated order regarding the remand motions in all eight cases.  "If actions before the court involve a common question of law or fact, the court may" consolidate the actions, join for hearing any or all matters at issue in the actions, or enter any other orders to avoid unnecessary costs or delays. Fed. R. Civ. P. 42(a). A district court, in its sound discretion, may consolidate related cases *sua sponte*. *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999). Once the district court determines there is a common question of law or fact, the court weighs the interest of judicial convenience in consolidating the cases against the delay, confusion, and prejudice that consolidation might cause. *See id*. ("In assessing whether consolidation is appropriate in given circumstances, a district court should consider both equity and judicial economy."); *Shump v. Balka*, 574 F.2d 1341, 1344 (10th Cir. 1978) (affirming denial of motion to consolidate because movants failed to establish that consolidation would promote trial convenience and economy in administration or that they suffered injury as a result of court's refusal to consolidate); *Servants of the Paraclete, Inc. v. Great American Ins. Co*., 866 F. Supp. 1560, 1572 (D.N.M. 1994) ("If the cases involve a common question of law or fact, the Court should then weigh the interests of judicial convenience in consolidating the cases against the delay, confusion, and prejudice consolidation might cause.").

Consolidation of the motions to remand in these cases is appropriate because all eight cases involve common questions of law and fact and the motions to remand all involve the same issues regarding the Court's subject matter jurisdiction. The relevant facts as to jurisdiction appear to be the same. These cases were recently filed, so there would be no delay caused by consolidation of this issue. The Court does not see any prejudice. The interests of judicial economy in consolidating the ruling on the motions to remand greatly outweigh any delay, confusion, or prejudice that may occur. Therefore, the Court will address the motions to remand together in one memorandum opinion and order.

At this time, only the motions to remand will be consolidated. The Court will file this consolidated order in each case.

II.     **Defendants' PREP Act defense does not completely preempt the claims in this case and does not confer federal question jurisdiction.**

Defendants assert that this court has federal question jurisdiction, as the claims in this case are completely preempted by the PREP Act. For the following alternate reasons, the Court concludes the PREP Act does not confer federal question jurisdiction in this case:

- The PREP Act as relevant here is not a complete preemption statute and does not completely preempt the state law claims in this case;

- Even assuming the PREP Act were a complete preemption statute, Plaintiffs have not alleged any of the following three elements to establish complete preemption of this case under the PREP Act: (1) Defendants committed willful misconduct (2) in the use of covered countermeasures which (3) resulted in the death or physical injury of the decedents.

    A.     **Removal standard.**

A defendant can remove a civil case brought in state court if the federal court has original jurisdiction. 28 U.S.C. § 1441(a).  There is a presumption against removal jurisdiction, which the defendant seeking removal must overcome. *See Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir.1982); *Martin v. Franklin Capital Corp.*, 251 F.3d 1283, 1290 (10th Cir. 2001).

"Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013). "As the parties removing this case to federal court, the defendants bear the burden of establishing jurisdiction by a preponderance of the evidence."  *Id.*; *see also Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004).

**B.      The PREP Act is not a complete preemption statute and does not create federal question jurisdiction in this case.**

Plaintiffs only asserted state law claims in their complaints.  Nevertheless, Defendants assert the Court has subject matter jurisdiction because a federal statute, the PREP Act, completely preempts the claims in this case.  The Court disagrees.  The Public Readiness and Emergency Preparedness Act ("PREP Act") as relevant here is not a complete preemption statute.  While the PREP Act may preempt some state law claims alleging that defendant committed willful misconduct in the use of covered countermeasures which resulted in physical injury or death, ordinary preemption provides an affirmative defense at trial and does not create federal subject matter jurisdiction. Therefore, federal question jurisdiction does not apply.

District courts have federal question jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "To exercise federal question jurisdiction under 28 U.S.C. § 1331, there must be a constitutional or federal statutory provision under which plaintiff [ ] [is] aggrieved." *Western Shoshone Business Council for and on*

*Behalf of Western Shoshone Tribe of Duck Valley Reservation v. Babbitt*, 1 F.3d 1052, 1058 (10th Cir. 1993) (citing *Gully v. First National Bank*, 299 U.S. 109, 112 (1936)). A federal district court has jurisdiction over cases in which "a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Under the well-pleaded complaint rule, if the federal question does not appear on the face of the plaintiff's complaint, there is no federal question jurisdiction. *See Garley*, 236 F.3d at 1207. In determining whether a claim arises under federal law, courts examine the well-pleaded allegations of the complaint and ignore potential defenses. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003).

Although Plaintiffs did not plead any federal claims, Defendants argue that federal question jurisdiction exists because they assert a defense under the PREP Act, which completely preempts Plaintiffs' claims. "Generally, preemption provides a defense, not a basis for removal." *Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845, 852 (6th Cir. 2023), *citing Caterpillar Inc. v. Williams*, 482 U.S. 386, 392–93, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Therefore, even if the statute has some preemptive force, ordinary preemption cannot be used as a basis for removal.

To assert federal question jurisdiction over Plaintiffs' complaint based on state law claims, Defendants must prove *complete preemption*. "Complete preemption is an exception to the well-pleaded complaint rule, in which federal preemption makes the state claim federal in character." *Salzer*, 762 F.3d at 1134. "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that action, even if pleaded in terms of state law, is in reality based on federal law." *Anderson*, 539 U.S. at 8, 123 S.Ct. 2058. *See also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) ("Congress may so

completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.").

"For the complete-preemption doctrine to apply, the challenged claims must 'fall within the scope of federal statutes intended by Congress completely to displace all state law on the given issue and comprehensively to regulate the area.'" *Devon Energy*, 693 F.3d at 1205 (quoting *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1221 (10th Cir. 2011)). Thus, the statute "must 'so pervasively regulate [its] respective area[ ]' that it leaves no room for state-law claims." *Id*. (quoting *Hansen*, 641 F.3d at 1221 (alterations omitted)).

Complete preemption is rare. "The name misleads because its focus is not on preemption (a defense to a state-law claim) but on federal occupation of a field. That happens only when federal law creates an exclusive cause of action and set[s] forth procedures and remedies governing that cause of action, such that it wholly displaces the state-law cause of action." *Martin*, 37 F.4th at 1213, *citing Beneficial National Bank v. Anderson*, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003).

The Public Readiness and Emergency Preparedness Act (PREP Act), 42 U.S.C. § 247d to § 247d–10, creates immunity for damages resulting from the use of covered countermeasures. However, it creates an exception to that immunity for willful misconduct in the use of covered countermeasures resulting in death or physical injury. "Section 247d–6d(a)(1) forbids liability under state law for injuries caused by use of a "covered countermeasure", and § 247d–6d(d)(1) creates a federal claim for injuries caused by 'willful misconduct' in connection with covered countermeasures." *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213 (7th Cir. 2022).

"[F]or the complete-preemption doctrine to apply, the challenged claims must fall within the scope of federal statutes intended by Congress completely to displace all state law on the given issue and comprehensively to regulate the area. That is, the asserted federal statute must "so pervasively regulate [its] respective area[ ] that it leaves no room for state-law claims" *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1204–05 (10th Cir. 2012) (internal citations and quotation marks omitted).

Here, the PREP Act does not occupy the field of public health so as to completely preempt Plaintiff's state law claims asserting negligence resulting in wrongful death. Rather, "Section 247d–6d(a)(1) is an ordinary rule of preemption, a defense to liability under state law. It does not create a new federal claim. Section 247d–6d(d)(1), which does create a federal claim (payable from a federal fund), covers only a subset of potential wrongs, those involving willful misconduct in using covered countermeasures, and does not preempt any other kind of claim, let alone occupy the field of health safety." *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213 (7th Cir. 2022); *see also Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 688 (9th Cir.), *cert. denied*, 143 S. Ct. 444, 214 L. Ed. 2d 253 (2022) ("finding that one claim *may* be preempted is different than finding that the "federal statutory scheme is so comprehensive that it *entirely supplants* state law causes of action," such as the Saldanas' other causes of action for elder abuse, custodial negligence, and wrongful death."); *Cagle v. NHC Healthcare-Maryland Heights, LLC*, 78 F.4th 1061, 1067 (8th Cir. 2023) ("ordinary principles of interpretation establish unambiguously that the PREP Act does not completely preempt state causes of action for negligence.").

Moreover, for complete preemption to apply, the federal cause of action must provide a

federal remedy that vindicates "the same basic right or interest that would otherwise by vindicated under state law." *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1207 (10th Cir. 2012). Here, the Court cannot conclude that the willful misconduct claim would provide a remedy that vindicates the same basic right under state law here, such as negligence and the Unfair Practices Act claims. *Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC*, No. 20-3287, 2023 WL 6290741, at *3 (3d Cir. Sept. 27, 2023). Even assuming Plaintiffs' claims fall under the willful misconduct cause of action, the PREP Act does not demonstrate an intent to replace state law, as state law provides "the substantive law for decision." § 247d-6d-(e)(2); *Matthews v. Centrus Energy Corp.,* 15 F.4th 714, 721 (6th Cir. 2021) (Price-Anderson Act did not completely preempt state law because it incorporated state law in its federal cause of action).

As relevant here, the PREP Act is an ordinary preemption or immunity statute. Therefore, the Court concludes that Plaintiffs' state law claims are not completely preempted, and this court therefore does not have federal question jurisdiction over the state law claims.

III. **Even if the PREP Act completely preempted claims for willful misconduct, Plaintiffs' claims and allegations fall outside the scope of the PREP Act.**

Even if the PREP Act were a complete preemption statute, the state law claims in this case do not fall under the complete preemption statutory language, as Plaintiffs do not allege willful misconduct claims.  The PREP Act only completely preempts claims alleging willful misconduct in the use of covered countermeasures causing death or physical injury. § 247d-6d(c)(1)(A) (setting out elements of willful misconduct); § 247d-6e(a) (covered countermeasure fund only covers injuries "directly caused by the administration or use of a covered countermeasure); § 247d-6d(e)(3)(A)( to allege a willful misconduct claim, plaintiff must plead "each act or omission, by each person sued, that is alleged to constitute willful misconduct relating to the covered

countermeasure administered to or used by the person on whose behalf the complaint was filed."). Here, Plaintiffs do not allege any of the following three elements: (1) willful misconduct in the (2) use of covered countermeasures, which (3) caused death or physical injury. Because none of these three elements are alleged in the complaint, the Court concludes that the state law claims are not completely preempted.

### A.   Defendants have not shown that Plaintiffs pled willful misconduct.

Defendants have not shown that Plaintiffs pled a willful misconduct claim. To establish complete preemption here, Defendants must show that Plaintiffs alleged (1) willful misconduct in (2) the use of a covered countermeasure which (3) *caused* death or *physical* injury. "The term 'willful misconduct' ... denote[s] an act or omission that is taken (i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." § 247d-6d(c)(1)(A). Willful misconduct is a "more stringent" standard of liability than is "recklessness" or any "standard of negligence." § 247d-6d(c)(1)(B). The immunity provision of the PREP Act applies only to "claim[s] for loss that ha[ve] a causal relationship with the administration to or use by an individual" of a covered countermeasure. 42 U.S.C. § 247d-6d(a)(2)(B). The statute excludes negligence "in any form"—including "willful" negligence— from the scope of a willful misconduct claim. *See Solomon*, 62 F.4th at 61 n.3 ("[T]his statutory language specifies that *no form of negligence* can constitute willful misconduct." (emphasis added)).

Here, Plaintiffs generally assert negligence-based claims. Mere allegations of recklessness or negligence do not satisfy the willful misconduct standard above. 42 U.S.C. § 247d-6d(c)(1)(B) (excluding negligence and recklessness from willful misconduct claims).

Plaintiffs have also requested punitive damages.  But merely alleging willfulness or wantonness does not satisfy the willful misconduct test under 42 U.S.C. § 247d-6d(c)(1)(A)). As multiple courts of appeal have found, merely asserting "willfulness" for a punitive damages claim falls far short of asserting willful misconduct.  *See Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845, 854 (6th Cir. 2023) (holding that a claim labeled as one for "reckless, intentional, willful and wanton misconduct" could not have been brought under the PREP Act's willful misconduct cause of action); *Maglioli*, 16 F.4th at 411 (holding that "standard language for a punitive-damages request" of "grossly reckless, willful, and wanton" conduct does not bring a claim under the willful misconduct cause of action); *see also Friedman v. Montefiore*, 2023 WL 4536084, at *4–5 (6th Cir. July 13, 2023) (same as to allegations that defendant acted "negligently, recklessly, and with malicious intent"); *Rivera-Zayas v. Our Lady of Consolation Geriatric Care Ctr.*, 2023 WL 2926286, at *3 (2d Cir. Apr. 13, 2023) (same as to allegations that conduct was "'willful", "knowing" and "in so careless a manner as to show complete disregard for the rights and safety of others").

Willfulness for punitive damages under New Mexico law is not the same as willful misconduct under the PREP Act.  *Compare* § 247d-6d(c)(1)(A) ("willful misconduct" is "an act or omission that is taken – (i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit.") *with* NMRA UJI 13-1827 (plaintiff can recover punitive damages under New Mexico Uniform Jury Instructions if defendant's conduct was willful. "Willful conduct is the intentional doing of an act with knowledge that harm may result."). Here, Plaintiffs have not alleged the three elements of willful misconduct. Plaintiffs do not allege that Defendants acted intentionally to achieve a wrongful purpose,

knowingly without legal or factual justification, and in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit.   Merely using the word "willful" in a complaint does not sufficiently allege the three elements of willful misconduct. *see Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 411 (3d Cir. 2021) (assertion of willfulness for punitive damages is not the same as assertion of willful misconduct under PREP Act).

Defendants assert that Plaintiffs have alleged willful misconduct, as they have alleged that Defendants used fraudulent or misleading statements, including in their advertising.   *See, e.g., Lopez v. Cantex Health Care Centers II, et al.* 1:23-cv-00915, Doc. 2-32, *Am*. Compl. ¶¶ 80-81, ¶¶ 94-95, ¶¶ 96-97. Plaintiffs' allegations of fraud or misleading statements do not constitute (1) willful misconduct, and in any event was not related to the (2) use of covered countermeasures (3) resulting in physical injury or death. Plaintiff pled a New Mexico Unfair Practices Act, which is focused on Defendants' (1) advertising practices and (2) statements made regarding the quality of care.   *See Id.* Am. Compl. at ¶ 81.   That language tracks the statutory language for New Mexico's Unfair Practices Act.   Plaintiffs appear to allege more than mere recklessness or negligence as to Defendants' representations or advertising.   But that language does not satisfy the three elements of the "willful misconduct" statute outlined above. *See, e.g., Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC*, No. 20-3287, 2023 WL 6290741, at *3 (3d Cir. Sept. 27, 2023) (misrepresentation claim was not a willful misconduct claim).   Moreover, the complaint does not allege willful misconduct in the use of covered countermeasures causing death or serious *physical* injury.   Rather, that claim focuses on "representations about the scope and quality of their nursing and long-term care services."   *Lopez v. Cantex Health Care Centers II, et al.* 1:23-cv-00915, Doc. 2-32, Am. Compl. at ¶ 79.   None of these allegations under the New Mexico UPA claim or

elsewhere in the complaint could be applied to imply a claim for "willful misconduct" in the *use* of covered countermeasures, causing *physical* injury or death. Plaintiffs merely attack the Defendants' advertising or statements regarding the care they provide. Therefore, Plaintiffs' allegations regarding fraudulent or misleading statements do not state a willful misconduct claim under the PREP Act.

This is the same for Plaintiffs' fraud claims, which focus on promises made by Defendants or their "fraudulent advertising". *See, e.g., Id.,* Am. Compl. at ¶¶ 93, 94. As stated above, alleged fraud regarding promises made as to quality of care does not appear to qualify as "willful misconduct" in the use of covered countermeasures causing death or physical injury.

**B.     Defendants have not shown that Plaintiffs alleged the use of covered countermeasures resulting in death or physical injury.**

Even assuming Plaintiffs had alleged "willful misconduct", Plaintiffs have not alleged willful misconduct in the (1) use of covered countermeasures (2) resulting in death or physical injury.

The PREP Act only applies to injuries caused by the administration or use of a covered countermeasure. 42 U.S.C. § 247d-6e(a) (fund only covers injuries "directly caused by the administration or use of a covered countermeasure."); § 247d-6d(e)(3)(A). To allege a willful misconduct claim, a plaintiff must plead with particularity each element of this claim including "each act or omission, by each covered person sued, that is alleged to constitute willful misconduct relating to the covered countermeasure administered to or used by the person on whose behalf the complaint was filed." *Id.* § 247d-6d-(e)(3)(A). Finally, the PREP Act immunity only applies to "claims for loss caused by, arising out of, relating to, resulting from the administration to or the use by an individual of a covered countermeasure." *Id.* § 247d-6d(a).

16

Here, Plaintiffs do not allege that the injuries were caused by the administration to or use by an individual of a covered countermeasure. *Lopez v. Cantex Health Care Centers II, et al.* 1:23-cv-00915, Doc. 2-32, Am. Compl. at ¶¶ 28-35. Rather, Plaintiffs assert that Defendants failed to implement any measures to prevent or mitigate the spread of COVID-19: (1) failing to implement a facility control plan, (2) failing to use personal protective equipment, (3) failing to sterilize equipment, (4) forcing staff to continue work despite exhibiting covid symptoms, (5) failing to hire a sufficient number of staff, and (6) failing to prevent staff from intermingling between residents who tested positive for Covid-19 or had Covid-19 symptoms and those residents who tested negative for Covid-19 or who did not have Covid-19 symptoms. *Id.*, ¶¶ 28-35.

Most of these allegations are unrelated to covered countermeasures. *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213–14 (7th Cir. 2022); *Manyweather v. Woodlawn manor, Inc.,* 40 F.4th 237, 245-46 (5th Cir. 2022) (allegations that facility (1) failed to conduct adequate screen and isolation and (2) failed to provide adequate protective gear to staff were not covered countermeasures causing death or physical injury). To the extent allegations are related to covered countermeasures, Plaintiffs merely assert that Defendants failed to use them. Such claims are "the opposite of a contention that a covered countermeasure caused harm." *Martin*, 37 F.4th at 1213-14; *see also Hudak*, 58 F.4th at 855–57; *Manyweather*, 40 F.4th at 245–46. Moreover, Plaintiffs do *not* allege that Defendants prioritized or purposefully allocated covered countermeasures, *i.e.*, that some patients were given covered countermeasures over others. Rather, Plaintiffs allege that Defendants failed to implement *any* measures to mitigate the spread of COVID-19. *Manyweather,* 40 F.4th at 246 (claim not completely preempted where plaintiff did not allege prioritization or purposeful allocation of a covered countermeasure, but instead assert that defendants did not deploy covered countermeasures at all).

The courts of appeals have repeatedly held that the "failure to use countermeasures" does not fall under the willful misconduct provision of § 247d-6(d)(1).  *Levert v. Montefiore Home*, No. 22-3876, 2023 WL 4536093, at *4 (6th Cir. July 13, 2023) ("This Court has already determined that allegations around the "*failure* to use countermeasures" do not fall under § 247d-6d(d)(1)."), *citing Hudak*, 58 F.4th at 857; *Manyweather,* 40 F.4th at 245-56 (failing to adequately screen and isolate resident and staff, and failure to provide adequate protective gear, were not an "administration … or use of a covered countermeasure" for the PREP Act to apply); *Martin v. Petersen Health Ops., LLC*, 37 F.4th 1210, 1213 (7th Cir. 2022) (allegations of failure to use masks or PPE is "the opposite of a contention that a covered countermeasure caused harm.").

Defendants have not shown that Plaintiffs alleged willful misconduct in the use of covered countermeasures resulting in physical injury or death. Therefore, Plaintiffs' state law claims are not completely preempted, and Defendants have not established federal question jurisdiction.

## IV.    **Defendants' assertion of federal officer jurisdiction is not well taken.**

Defendants also removed this case under federal officer jurisdiction pursuant to 28 U.S.C. § 1442(a)(1).  The Court concludes that this is not a proper basis for removal.

The federal officer removal statute permits removal of a state court civil action "that is against or directed to ... any officer (or any person acting under that officer) of the United States or of any agency thereof ... for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). "The statute's 'basic purpose' is to protect against the interference with federal operations that would ensue if a state were able to arrest federal officers and agents acting within the scope of their authority and bring them to trial in a state court for an alleged state-law offense." *Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1250–51 (10th Cir. 2022).  Federal courts have subject-matter jurisdiction over claims that are properly

removed under § 1442(a)(1). *See Mesa v. California*, 489 U.S. 121, 136, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989).

However, private defendants may assert federal officer jurisdiction under § 1442(a)(1) "if they can show (1) they acted under the direction of a federal officer, (2) the claim has a connection or association with government-directed conduct, and (3) they have a colorable federal defense to the claim or claims." *Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1251 (10th Cir. 2022). None of these elements have been established here.

Defendants have not shown they are acting under the direction of a federal officer. The Tenth Circuit has described the "acting under" test as follows:

> The statutory phrase 'acting under' describes 'the triggering relationship between a private entity and a federal officer.'" *Baltimore II*, 952 F.3d at 462 (quoting *Watson*, 551 U.S. at 149, 127 S.Ct. 2301). "The words 'acting under' are broad," but "not limitless." *Watson*, 551 U.S. at 147, 127 S.Ct. 2301. In this context, "under" describes a relationship between private entity and federal superior typically involving "'subjection, guidance, or control.' " *Id.* at 151, 127 S.Ct. 2301 (quoting Webster's New International Dictionary 2765 (2d ed. 1953)). Thus, a "private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* at 152, 127 S.Ct. 2301. This "help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law [ ] ..., even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.* at 152–53, 127 S.Ct. 2301. Rather, "there must exist a 'special relationship' between" the private firm and the federal superior. *Isaacson*, 517 F.3d at 137 (quoting *Watson*, 551 U.S. at 157, 127 S.Ct. 2301).

*Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1251 (10th Cir. 2022).

Here, there is no evidence of any delegation from a federal officer, or any principal or principal relationship. Moreover, there is nothing suggesting that Defendants were acting under a federal officer, aside from merely complying with regulation. "Compliance with federal laws, regulations, and rules does not transform an entity into a federal officer. This is the same for nursing homes during the COVID-19 pandemic." *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th

679, 684–85 (9th Cir.), *cert. denied,* 143 S. Ct. 444 (2022) (applying federal officer jurisdiction to PREP Act); *Martin v. Petersen Health Operations, LLC,* 37 F.4th 1210, 1212–13 (7th Cir. 2022) (in applying PREP Act, reasoning that nursing homes "home must comply with many federal requirements, but it has been understood for a long time that regulation does not turn a private entity into a public actor."); *Perez on behalf of Est. of Lozano v. Se. SNF, L.L.C.*, No. 21-50399, 2022 WL 987187, at *2 (5th Cir. Mar. 31, 2022) (applying PREP Act, concluding that"[t]he mere fact of federal regulation, even to a high degree of specificity, cannot meet this element."); *Hudak Est. of Koballa v. Elmcroft of Sagamore Hills*, 58 F.4th 845 (6th Cir. 2023).  Defendants did not have an agreement with the federal government, did not produce a good or perform a service on behalf of the government, and have not shown that the Government exercised control to such a degree that the Government acted as Defendants' superior.  *See, e.g., Hudak Est. of Koballa v. Elmcroft of Sagamore Hills*, 58 F.4th 845 (6th Cir. 2023).

Defendants argue that their designation as "critical infrastructure" creates federal officer jurisdiction. The Court disagrees.  "It cannot be that the federal government's mere designation of an industry as important—or even critical—is sufficient to federalize an entity's operations and confer federal jurisdiction." *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 740 (8th Cir. 2021); *see also Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 406 (3d Cir. 2021).  The mere status of nursing homes as critical infrastructure "does not establish that it acted under a federal officer or agency, or that it carried out a government duty."  *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 685–86 (9th Cir.), *cert. denied,* 143 S. Ct. 444 (2022).

Defendants have not cited to a single case in their responses which has held that the PREP Act created federal officer jurisdiction.  Rather, every circuit court of appeals to address this issue[2]

---

[2] As of the entry of this order, it appears the First, Fourth, Tenth, and Eleventh Circuits have not yet addressed this issue.

has rejected the theory PREP Act's regulation of nursing homes creates federal officer jurisdiction. *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 63 (2d Cir. 2023) (rejecting federal officer jurisdiction under PREP Act); *Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC*, No. 20-3287, 2023 WL 6290741, at *5 (3d Cir. Sept. 27, 2023), *citing Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 404 (3d Cir. 2021) (same); *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 589–90 (5th Cir. 2022); *Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845, 859 (6th Cir. 2023) (same); *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1212–13 (7th Cir. 2022) (same); *Cagle v. NHC Healthcare-Maryland Heights, LLC*, 78 F.4th 1061, 1068 (8th Cir. 2023); *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 685–86 (9th Cir.), *cert. denied,* 143 S. Ct. 444 (2022) (same).

As in *Saldana*, Defendants have "failed to substantiate [their] claims that it was conscripted to assist a federal officer or agency in performance of a government duty or that it was authorized to act for a federal officer. All that [Defendants] ha[ve] demonstrated is that [they] operated as a private entit[ies] subject to government regulations, and that during the COVID-19 pandemic [they] received additional regulations and recommendations from federal agencies. Thus, [Defendants were] not "acting under" a federal officer or agency as contemplated by the federal officer removal statute." 27 F.4th at 685-86.

As to the second element, the claims are not associated with government directed conduct. If anything, Plaintiffs allege that Defendants did *not* use covered countermeasures.

Finally, as to the third element, the Defendants do not have a colorable federal defense under Plaintiffs' allegations.  Generally, Plaintiffs argue that Defendants were negligent in not using covered countermeasures, and therefore their allegations do not appear to fall under the PREP Act's scope.

Therefore, Defendants have not shown that federal officer jurisdiction applies here.

**V.**     **There is no substantial federal question under *Grable*.**

Defendants alternatively argue that there is federal question jurisdiction, because Plaintiffs' state law claims "turn on substantial questions of federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005).

Under the *Grable* doctrine, "a federal court [is] able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312. That is to say, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

*Grable* does not apply here because no substantial federal questions are raised in the complaints. Plaintiffs' complaints do not raise a federal issue or require a court to address or resolve one.  Rather, Plaintiffs merely assert state law claims, without referencing any federal law or statute.  Defendants may attempt to raise a federal defense, but circuit courts have routinely held that *Grable* does not apply where Defendants raise a federal defense under the PREP Act.  *See Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 688 (9th Cir.), *cert. denied*, 143 S. Ct. 444 (2022) (defendant "seeks to raise a federal defense under the PREP Act, but a federal defense is not a sufficient basis to find embedded federal question jurisdiction."); *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 64 (2d Cir. 2023) (PREP Act defense is not a sufficient basis to find an embedded federal question); *Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845, 858 (6th Cir. 2023); *Maglioli*, 16 F.4th at 413; *Mitchell*, 28 F.4th at 588–89; *Martin*, 37 F.4th at 1214–15; *Perez*

*on behalf of Est. of Lozano v. Se. SNF, L.L.C.*, No. 21-50399, 2022 WL 987187, at *3 (5th Cir. Mar. 31, 2022).

Moreover, it is unclear whether any federal defense even applies because Plaintiffs do not allege that Defendants' use of a covered countermeasure caused the deaths of the decedents in this case. *See, e.g., Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1214–15 (7th Cir. 2022) ("It is enough to say that the principal disputes requiring adjudication in this suit are likely to be issues such as whether the nursing home allowed members of the staff to work while ill, failed to isolate residents who contracted COVID-19, and so on. These issues have nothing to do with any federal statute, so the conditions that *Grable* sets for federal jurisdiction are not satisfied.").

Therefore, the *Grable* doctrine does not apply here and does not create federal question jurisdiction here.

**VI.    Court declines to award fees or sanctions.**

Plaintiffs request sanctions, or alternatively fees, asserting that Defendants impermissibly removed this case a second time.   There is no binding Tenth Circuit case stating that new defendants added to a case after the case has been remanded cannot remove the case again.  *Mattel v. Bryant,* 441 F.Supp.2d 1081, 1089 (C.D.Cal.2005) ("[s]uccessive removals are not necessarily barred."). Moreover, the original Defendants did not remove this case a second time. Rather, the new defendants removed this case after they were added to this case in the amended complaint.

Defendants asserted three separate bases for removal.   Generally, a court may only award fees under 28 U.S.C. § 1447(c) where the "removing party lacked an objectively reasonable basis for removal," absent unusual circumstances.  *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141, 126 S. Ct. 704, 711, 163 L. Ed. 2d 547 (2005).  The Court does not find unusual circumstances

warranting departure from this rule. *Id.* Here, Defendants' assertion that federal question jurisdiction existed because the PREP Act completed preempted the claims in this case was objectively reasonable. Since at least one basis for removal was objectively reasonable, the Court cannot say that *removal* was objectively unreasonable.

Moreover, the Court declines to sanction Defendants under Rule 11. Plaintiffs assert that Defendants' removal for federal officer jurisdiction was frivolous. To be sure, the Court is not aware of any circuit case ruling in Defendants' favor on this issue. Even if it were frivolous, other grounds for removal were not frivolous, and "the presence of a single frivolous or groundless claim, however, may not always mandate Rule 11 sanctions." *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1158 (10th Cir. 1991). The Court, in its discretion, declines to sanction Defendants.

Finally, Plaintiffs assert that federal officer jurisdiction was asserted in bad faith to gain a right to appeal a normally unappealable remand order under 28 U.S.C. § 1447(d). The Court cannot conclude that federal officer jurisdiction was asserted in bad faith, or that this is an unusual circumstance under § 1447(c) and *Martin* warranting fees. Alternatively, the United States Supreme Court expressly granted defendants the right to assert federal officer jurisdiction and seek appellate review of the entire remand order, despite the consequences which might follow. *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1542, 209 L. Ed. 2d 631 (2021) ("once more, this Court's task is to discern and apply the law's plain meaning as faithfully as we can, not to assess the consequences of each approach and adopt the one that produces the least mischief."). Although the United States Supreme Court has suggested that defendants may be sanctioned if they frivolously remove a case based on federal officer jurisdiction, here there were

other non-frivolous grounds for removal. The Court in its discretion declines to sanction Defendants, as explained above.

## CONCLUSION

The Court remands each of the eight wrongful death cases for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c). Each case shall be remanded to the First Judicial District Court, County of Santa Fe, New Mexico. This order will be entered in all eight cases.

**IT IS THEREFORE ORDERED** that in each of the following eight wrongful death cases, the motion to remand is **GRANTED**:

(1) *Lopez (Gabehart) v. Cantex Health Care Centers II, LLC, et al*., 23-cv-00765 KWR/KK; (2) *Lopez (Cook) v. Cantex Health Care Centers II, LLC, et al*., 23-cv-00769 KWR/KK; (3) *Lopez (Harwood) v. Cantex Health Care Centers II, LLC, et al*., 23-cv-770 KWR/KK; (4) *Lopez (Begay) v. Cantex Health Care Centers II, LLC*, *et al*., 23-cv-915 KWR/KK; (5) *Lopez (Pioche) v. Cantex Health Care Centers II, LLC, et al*., 23-cv-920 KWR/KK; and (6) *Lopez (Hunt) v. Cantex Health Care Centers II, LLC*, *et al*., 23-cv-961 KWR/KK; and (7) *Lopez (Lewis) v. Cantex Health Care Centers II, LLC, et al.,* 23-cv-1003 KWR/KK; and (8) *Murphy v. Cantex Health Care Centers II, LLC, et al.*, 23-cv-1005 KWR/KK.

**IT IS FURTHER ORDERED** that all eight wrongful death cases are remanded to the First Judicial District, Santa Fe County, New Mexico.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to take the necessary actions to remand these eight cases.



UNITED STATES DISTRICT JUDGE